KENNEDY, JENNIK & MURRAY, P.C.
Attorneys for Plaintiff
113 University Place, 7th Floor
New York, New York 10003
Tel. (212) 358-1500

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

**MASON TENDERS DISTRICT COUNCIL OF**
**GREATER NEW YORK,**

Case No. _____

Plaintiff,

-against-

**GILBANE BUILDING COMPANY and GOTHAM**          **COMPLAINT**
**CONSTRUCTION COMPANY, LLC,**

Defendants.

-------------------------------------------------------------------------X

Mason Tenders District Council of Greater New York ("MTDC" or "Union"), by its

attorneys, Kennedy, Jennik & Murray, P.C., complains of Defendants Gilbane Building

Company ("Gilbane") and Gotham Construction Company LLC ("Gotham") as follows:

## INTRODUCTION

1.       Gotham is a member of the Building Contractors Association, Inc., a trade

organization that is party to a collective bargaining agreement with Plaintiff MTDC ("CBA").

The CBA became effective on July 1, 2014 and expires on June 30, 2018, unless further renewed

by operation of law or by the parties.

2.       The Union seeks in this Complaint to obtain damages under the CBA from

Gilbane and Gotham based upon their failing and refusing to apply the CBA to the bargaining

unit work performed on projects such as 1 Wall Street and 118 Fulton Street.

3.       The CBA imposes upon signatory employers, such as Gotham, and on entities,

such as Gilbane, that are affiliated employers by virtue of a de facto merger, joint employer

1

status or single employer status, an obligation to make wage payments, transmit dues plus assessments to MTDC and make periodic contributions to multiemployer benefit funds based on covered work hours performed by laborers at Gotham and Gilbane construction jobs. Since April 15, 2015, Gotham and Gilbane owe unpaid wages, dues, assessments and contributions to the benefit funds for covered laborer work hours on projects for which wages were required to be paid and contributions were required to be made to these multiemployer benefit funds.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(a).

5.      Venue lies in this district under 29 U.S.C. § 1391, as a substantial number of the violations of the applicable labor agreement occurred in this district.

## PARTIES

6.      MTDC is an unincorporated association under the law of New York, and a labor organization within the meaning of 29 U.S.C. § 152(5) with its principal place of business at 520 Eighth Avenue, New York, NY 10018.

7.      Gilbane is a Rhode Island corporation located at Wall Street Plaza, 88 Pine Street, 27th Floor, New York, NY 10005.

8.      Gotham is a New York limited liability corporation located at 432 Park Avenue South, Second Floor,  New York, NY 10016.

## FACTS

**THE CBA**

9.      Gotham is a general contractor or construction manager in the metropolitan New York City construction industry that is party to collective bargaining contracts with the MTDC

2

through its membership in the multi-employer collective bargaining association known as the Building Contractors Association, Inc. ("BCA").

10.     The most recent CBA between MTDC and the BCA was effective July 1, 2014 and will expire June 30, 2018.

11.     The CBA requires that general contractors or construction managers that are party to the CBA to apply the CBA on all present and future jobs in Greater New York City.

12.     The CBA carefully defines the bargaining unit work that BCA employers are required to assign to workers represented by MTDC. Examples of bargaining unit work include, but is not limited to, unloading materials used to fence in job sites, cleaning and sweeping sidewalks and other areas of construction projects, installing trailers or shanties on job sites, installing and maintaining temporary heat and fire preventive equipment on job sites, mixing and placing concrete in certain foundations, wheeling or carrying materials in or about job sites, and erecting or removing scaffolding used by employees.

13.     Article I, Section 1 of the CBA obligates Gotham to recognize the MTDC as the Section 9(a) exclusive collective bargaining representative for all of the laborers employed in the Greater New York City Area performing work which is within the jurisdiction described in the CBA on all present and future job sites.

14.     On or about April 1, 2015, Gotham entered into a transaction ("the Transaction") with Gilbane in which Gilbane acquired the general contracting and construction management business of Gotham, including the existing Gotham portfolio of construction contracts, the employment of Gotham executives and supervisors, the use of Gotham construction equipment, the goodwill that Gotham had developed as a successful union general contractor in the New York City area and the obligation to employ MTDC laborers under the BCA contract.

15.     After the Transaction between Gotham and Gilbane in April, 2015, the officers and executives who ran the Gotham general contracting business became officers and executives of Gilbane, including the following:

a) The Chairman and CEO of Gotham, Joel Picket, became the Vice Chairman of Gilbane.

b) Gotham President John Giamarella became a Vice President and employee of Gilbane.

c) Gotham Vice President and General Superintendent Ed Bigley became a Vice President and employee of Gilbane.

d) Gotham Associate Vice President Jennifer Johnson became a Controller at Gilbane.

e) Gotham Chief Estimator Stanley Kalinowski became an Estimating Executive at Gilbane.

f) Gotham Senior Project Manager Elroy Pierre became a Senior Project Manager at Gilbane.

16.     After the Transaction between Gotham and Gilbane in April, 2015, the Gotham portfolio of Construction Projects was assigned to Gilbane, including:

a) The project at 547 10th Avenue ("10th Avenue Project"),

b) The project at 155 Richmond Terrace ("Richmond Terrace Project"),

c) The project at 855 6th Avenue ("6th Avenue Project"), and

d) The project at 525 West 52nd Street ("52nd Street Project") (collectively the "Assigned Projects").

17.     The 10th Avenue Project commenced on or about May 8, 2015, after the Transaction. The new building permit was originally issued to Gotham.  On or about April 27,

4

2015, the building's owner notified the New York City Department of Buildings ("NYCDOB") that William Decamp (of Gilbane) would be the new general contractor, replacing Lawrence Feiner (of Gotham). After the Transaction, Gotham and Gilbane jointly employed laborers performing MTDC bargaining unit work on the 10th Avenue Project. Three to four MTDC members were employed on the 10th Avenue Project between February and April 2015; six MTDC members, between May and June 2015; eight MTDC members, in late June 2015; nine MTDC members, between July and August 2015; eight MTDC members, in late August and early September 2015; nine MTDC members, between September and November 2015; ten MTDC members between December 2015 and February 2016; and from eleven to thirteen MTDC members, between February and April 2016.

18.    The Richmond Terrace Project commenced in or around early Spring 2016. A foundation permit for the Richmond Terrace Project was originally issued to Gotham. On or about June 15, 2015, the building's owner notified the NYCDOB that William Decamp of Gilbane was to replace Lawrence Feiner of Gotham as the new general contractor. As of early April 2016, one MTDC member was assigned to the Richmond Terrace Project. After the Transaction, Gotham and Gilbane jointly employed laborers performing MTDC bargaining unit work on the Richmond Terrace Project.

19.    A new building permit was originally issued to Gotham for the 6th Avenue Project before the Transaction. On or about March 30, 2015, the building's owner notified the NYCDOB that Gotham would no longer be the general contractor and that Gilbane would be the new general contractor. After the Transaction, Gotham and Gilbane jointly employed laborers performing MTDC bargaining unit work on the 6th Avenue Project. Nine MTDC members were employed on the 6th Avenue Project between March and early May 2015; ten MTDC members,

between May and June 2015; eleven to twelve MTDC members, from July 2015 to March 2016; fourteen MTDC members, between late March and early April; and twelve MTDC members, in mid-April 2016.  MTDC Shop steward reports show that the same nine MTDC members were jointly  employed by Gilbane and Gotham at the 6th Avenue Project both before and after the Transaction.

20.     The 52nd Street Project commenced on or about early February 2016. On or about November 3, 2015, a renewal permit was issued to Gilbane; a second renewal permit was issued to Gilbane on or about April 28, 2015. After the Transaction, Gotham and Gilbane jointly employed laborers performing MTDC bargaining unit work on the 52nd Street Project. Three MTDC members were jointly employed on the 52nd Street Project at its commencement in early February 2016; four MTDC members were jointly employed on the 52nd Street Project in late February to mid-March; five MTDC members were jointly employed on the 52nd Street Project in the week of March 23, 2016; and six MTDC members were jointly employed on the 52nd Street Project in the week of March 30, 2016.

21.     At the time of the transaction, Gotham was also managing construction of the project at 250 Ashland Place, Brooklyn, New York ("Ashland Place Project"). This project was well underway at the time of the Transaction.  The owner of the Ashland Place Project did not transfer the project to Gilbane, and Gotham remains the general contractor. However, as set forth below, Gotham was no longer engaged in the construction management business as of the Transaction, and Gotham's senior management personnel were actually employed by Gilbane. After the Transaction, Gotham and Gilbane jointly employed laborers performing MTDC bargaining unit work on the Ashland Place Project.  Gilbane controls, shares, or codetermines the terms and conditions for MTDC members employed at the project at 250 Ashland Place.

6

22.     After and as a result of the Transaction, Gotham ceased performing any general contractor or construction management work in the construction industry other than as an agent of and joint employer with Gilbane.

23.     The intent and effect of the Transaction was to merge the Gotham general contractor and construction management business in the New York City construction industry into Gilbane.

24.     As part of the Transaction, Gotham agreed with Gilbane that it would no longer engage in the general contractor and construction management business in the New York City construction industry and would instead restrict its business activities to real estate development projects.

25.     After the Transaction the construction management operations of Gotham and Gilbane were consolidated into a single entity, as shown by the following:

a)  Gotham and Gilbane jointly employed the laborers on the four assigned projects. For example on the 6th Avenue Project, prior to the Transaction, Gotham contributed to the MTDC Benefit Funds for the same MTDC represented individuals that Gotham and Gilbane contributed on behalf of after the Transaction:

    i.  MTDC member Joseph Lupo was employed on the 6th Avenue Project before and after the Transaction. In March, 2015 before the Transaction, Gotham made contributions to the MTDC Benefit Funds on behalf of Mr. Lupo for one hundred and seventy-four (174) hours on the 6th Avenue Project. After the Transaction, Gotham and Gilbane made contributions for work on the 6th Avenue Project to the MTDC Benefit Funds for Mr. Lupo in April, 2015 for two hundred and eight (208) hours; in May, 2015, one hundred and sixty-four

(164) hours; in June, 2015, one hundred and eighty-six (186) hours; in July,

2015, two hundred and forty (240) hours; in August, 2015, one hundred and

ninety-two (192) hours; in September, 2015, two hundred and twenty-nine

(229) hours; in October, 2015, one hundred and ninety-four (194) hours; in

November, 2015, one hundred and eighty-six (186) hours; in December, 2015,

one hundred and ninety-eight (198) hours; in January, 2016, one hundred and

seventy-five (175) hours; in February, 2016, two hundred (200) hours; in

March, 2016, two hundred and forty-six (246) hours; and in April, 2016, one

hundred and ninety-six (196) hours.

ii.  MTDC member Chris McGinn was employed on the 6th Avenue Project

before and after the Transaction. In March, 2015, before the Transaction,

Gotham made contributions to the MTDC Benefit Funds on behalf of Mr.

McGinn for three hundred and seventy (370) hours on the 6th Avenue Project.

After the Transaction, Gotham and Gilbane made contributions to the MTDC

Benefit Funds for Mr. McGinn for work on the 6th Avenue Project in April,

2015 for four hundred and ten (410) hours; in May, 2015, three hundred and

seventeen (317) hours; in June, 2015, two hundred and ninety-three (293)

hours; in July, 2015, four hundred and thirteen (413) hours; in August, 2015,

three hundred and thirty-four (334) hours; in September, 2015, three hundred

and eighty-two (382) hours; in October, 2015, three hundred and forty-seven

(347) hours; in November, 2015, three hundred and twenty-eight (328) hours;

in December, 2015, three hundred and eighty-nine (389) hours; in January,

2016, two hundred and ninety-five (295) hours; in February, 2016, three

hundred and thirteen (313) hours; in March, 2016, three hundred and eighty-six (386) hours; and in April, 2016, two hundred and ninety-three (293) hours.

iii. MTDC member Keith McRae was employed on the 6th Avenue Project before and after the Transaction. In March, 2015, before the Transaction, Gotham made contributions to the MTDC Benefit Funds on behalf of Mr. McRae for one hundred and ninety-seven (197) hours on the 6th Avenue Project. After the Transaction, Gotham and Gilbane made contributions to the MTDC Benefit Funds for Mr. McRae for work on the 6th Avenue Project in April, 2015 for two hundred and eight (208) hours; in May, 2015, one hundred and seventy-four (174) hours; in June, 2015, one hundred and thirty (130) hours; in July, 2015, two hundred and sixty-eight (268) hours; in August, 2015, one hundred and ninety-eight (198) hours; in September, 2015, two hundred and sixty-three (263) hours; in October, 2015, two hundred and thirty-three (233) hours; in November, 2015, two hundred and ten (210) hours; in December, 2015, one hundred and ninety (190) hours; and in January, 2016, one hundred and sixty-three (163) hours.

iv. MTDC member Roberto Perez was employed on the 6th Avenue Project before and after the Transaction. In March, 2015, before the Transaction, Gotham made contributions to the MTDC Benefit Funds on behalf of Mr. Perez for one hundred and ninety-eight (198) hours. After the Transaction, Gotham and Gilbane made contributions to the MTDC Benefit Funds for Mr. Perez in April, 2015 for two hundred and twenty-four (224) hours; in May, 2015, one hundred and ninety-two (192) hours; in June, 2015, two hundred

and nine (209) hours; in July, 2015, two hundred and seventy-three (273) hours; in August, 2015, two hundred and twenty-seven (227) hours; in September, 2015, two hundred and sixty-one (261) hours; in October, 2015, two hundred and sixty-eight (268) hours; in November, 2015, one hundred and ninety-nine (199) hours; in December, 2015, two hundred and sixty-one (261) hours; in January, 2016, one hundred and ninety-one (191) hours; in February, 2016, two hundred and forty-four (244) hours; in March, 2016, two hundred and sixty (260) hours; and in April, 2016, one hundred and ninety (190) hours.

v.  MTDC member Timothy Randolph was employed on the 6th Avenue Project before and after the Transaction. In March, 2015, before the Transaction, Gotham made contributions to the MTDC Benefit Funds on behalf of Mr. Randolph for one hundred and eighty-nine (189) hours on the 6th Avenue Project. After the Transaction, Gotham and Gilbane made contributions to the MTDC Benefit Funds for Mr. Randolph on the 6th Avenue Project in April, 2015 for two hundred and thirty-three (233) hours; in May, 2015, one hundred and eighty-two (182) hours; in June, 2015, two hundred and six (206) hours; in July, 2015, two hundred and sixty-five (265) hours; in August, 2015, two hundred and three (203) hours; in September, 2015, two hundred and sixty-one (261) hours; in October, 2015, two hundred and fifty-six (256) hours; in November, 2015, two hundred and four (204) hours; in December, 2015, two hundred and three (203) hours; in January, 2016, one hundred and sixty-eight

(168) hours; in February, 2016, two hundred and twenty-two (222) hours; and in March, 2016, two hundred and forty-six (246) hours.

vi. MTDC member Roy Sherman was employed on the 6th Avenue Project before and after the Transaction. In March, 2015, before the Transaction, Gotham made contributions to the MTDC Benefit Funds on behalf of Mr. Sherman for two hundred and five (205) hours on the 6th Avenue Project. After the Transaction, Gotham and Gilbane made contributions to the MTDC Benefit Funds for Mr. Sherman for work on the 6th Avenue Project in April, 2015 for two hundred and twenty-six (226) hours; in May, 2015, one hundred and eighty-nine (189) hours; in June, 2015, one hundred and sixty-seven (167) hours; in July, 2015, two hundred and seventy-three (273) hours; in August, 2015, two hundred and three (203) hours; in September, 2015, two hundred and fifty-three (253) hours; in October, 2015, two hundred and thirty (230) hours; in November, 2015, two hundred and eight (208) hours; in December, 2015, two hundred and forty-seven (247) hours; in January, 2016, one hundred and eighty (180) hours; in February, 2016, two hundred and eighteen (218) hours; in March, 2016, two hundred and seventy-eight (278) hours; and in April, 2016, two hundred and eight (208) hours.

vii. MTDC member Trevor Zakers was employed on the 6th Avenue Project before and after the Transaction. In March, 2015, before the Transaction, Gotham made contributions to the MTDC Benefit Funds on behalf of Mr. Zakers for two hundred and ten (210) hours on the 6th Avenue Project. After the Transaction, Gotham and Gilbane made contributions to the MTDC

Benefit Funds for Mr. Zakers for work on the 6th Avenue Project in April, 2015 for two hundred and sixty-six (266) hours; in May, 2015, two hundred and eleven (211) hours; in June, 2015, two hundred and thirty-nine (239) hours; in July, 2015, three hundred and twenty (320) hours; in August, 2015, two hundred and thirty-seven (237) hours; in September, 2015, two hundred and eighty-eight (288) hours; in October, 2015, two hundred and eleven (211) hours; in November, 2015, two hundred and forty-two (242) hours; in December, 2015, two hundred and sixty-one (261) hours; in January, 2016, seventy-seven (77) hours; in February, 2016, two hundred and fifty-two (252) hours; in March, 2016, two hundred and eighty-four (284) hours; and in April, 2016, one hundred and seventy-six (176) hours.

b) Gotham served as a paymaster for Gilbane at the four assigned projects.

c) Gilbane actually supervised and controlled the laborers employed on the Assigned Projects but the payrolls for the Assigned Projects were technically in the name of Gotham.

d) Gilbane made the labor relations decisions on the Assigned Projects, including how many laborers to hire, which laborers to hire, and which laborers to let go and when they would be let go.

e) Gilbane stepped into and assumed insurance contracts and arrangements previously made by Gotham.

f) On or about June 17, 2015, Gilbane filed a certificate of liability insurance with the NYCDOB insuring Gilbane in connection with the 10th Avenue Project for the June 30, 2015 to June 30, 2016 policy year.  The policy number for the commercial general

12

liability insurance was the same as the one used by Gotham for the 2014-15 prior policy year and the policy limits were identical.  Further, the broker and the insurer were the same.

g)  For the 52nd Street Project, a 10-day notice to adjoining property holders listed Gotham as the general contractor, but a limited liability insurance policy posted in the virtual job folder maintained by the NYCDOB is identified as Gotham/Gilbane Contractor Controlled Insurance Program.

h)  A Liability Insurance certificate for the 52nd Street Project identifies Gotham and Gilbane as insureds on the same general liability and worker compensation policies.

26.     Gilbane is the successor to the Gotham general contractor and construction management business in the New York City construction industry.

27.     Gilbane has failed and refused to apply the CBA on projects for which it is providing general contractor and construction management business in the New York City construction industry, including projects at 1 Wall Street ("Wall Street Project"); and 118 Fulton Street ("Fulton Street Project"). Instead of utilizing MTDC represented laborers to perform covered work on those construction projects, Gilbane has sub-contracted the laborers' work to an entity known as Tradeoff Construction Services ("Tradeoff") which does not have a contract with the MTDC.

**FIRST CAUSE OF ACTION**
**AGAINST GILBANE AND GOTHAM AS DE FACTO MERGED ENTITIES**

28.     MTDC repeats and re-alleges the allegations of the preceding paragraphs as though fully set forth herein.

29.     Successor liability under collective bargaining contracts is determined by the facts of any transaction. Where there is continuity in the employing entity, it is not necessary to

13

distinguish between corporate mergers, business consolidations and purchases of assets for purposes of applying collective bargaining agreements.

30.     Gilbane absorbed the general contractor and construction management business of Gotham, including its goodwill and reputation, its officers, executives, employees, contracts for construction services, insurance policies and authority with respect to labor relations for laborers employed on the Assigned Projects. Since it simultaneously secured from Gotham a commitment that Gotham would no longer participate in the general contractor and construction management business in the New York City construction industry, Gilbane is the only entity that can fulfill the obligations that Gotham assumed under the CBA.

31.     A de facto merger between business entities allegedly engaged in an asset sale occurs for purposes of the federal common law pursuant to Section 301, 29 U.S.C. § 185, when the transaction demonstrates

a)  continuity of ownership: the owner, chairman and CEO of Gotham, Joel Pickett, became the Vice Chairman of Gilbane, a member of the Board of Directors of Gilbane and either a shareholder of Gilbane or otherwise acquired a right to participate in the profits of Gilbane that establishes continuity of ownership between Gotham and Gilbane;

b)  cessation of ordinary business and dissolution of the acquired corporation as soon as possible: Gotham effectively ceased its ordinary business as a construction manager or general contractor upon the date of the Transaction and Gotham, while not formally dissolved, is limited to business activities such as development that do not allow it to act as a construction manager or general contractor;

14

c) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation: Gilbane assumed the liabilities that Gotham had prior to the Transaction in connection with its construction manager and general contractor business; and

d) continuity of management, personnel, physical location, assets, and general business operation: Gilbane hired the employees of Gotham, continued Gotham's management personnel and performed work at the physical locations where Gotham was performing work. Gilbane acquired certain assets Gotham utilized in connection with its general contracting and construction management work and the general business operations of Gotham.

32.     The de facto merger of Gilbane and Gotham requires Gilbane to adhere to the CBA.

33.     Gilbane's subcontracting of laborers' work on the Wall Street and Fulton Street Projects to Tradeoff is a violation of Article II, Section 2 of the CBA which states: "The Employer shall not sub-contract 'on site' bargaining unit work as defined in Article IV unless the employer receiving the subcontract has an Agreement with the Union."

34.     The MTDC, its members and the multi-employer employee benefit funds to which employers are required to make contributions pursuant to Article VI, including the Mason Tenders District Council Welfare Fund, the Mason Tenders District Council Pension Fund, the Mason Tenders District Council Annuity Fund, the Mason Tenders Training Program Fund have all been injured by the loss of wages and contributions resulting from Gilbane's assignment of laborers work on construction projects in the Greater New York City area to persons that are not represented by the MTDC and employed pursuant to the CBA.

## SECOND CAUSE OF ACTION
## AGAINST GILBANE AND GOTHAM AS JOINT EMPLOYERS

35.     MTDC repeats and re-alleges the allegations of the preceding paragraphs as though fully set forth herein.

36.     Gilbane is a joint employer with Gotham.  As  joint employer with Gotham, Gilbane is required to adhere to the MTDC CBA with BCA which recognizes MTDC as the exclusive collective bargaining representative for the collective bargaining unit set forth in the CBA.

37.     A paymaster under the CBA is an arrangement in which one employer utilizes another employer to hire and pay employees to act as laborers in the bargaining unit represented by MTDC. Pursuant to Article III, Section 3 of the CBA, employers who act as paymasters and who employ paymasters are joint employers.

38.     Gotham and Gilbane share or codetermine all matters governing the essential terms and conditions of laborers employment at the Assigned Projects and at the Ashland Place, Wall Street and Fulton Street Projects.

39.     Gilbane and Gotham are also joint employers based on Gotham's service as a paymaster for Gilbane on the Assigned Projects.

40.     After April 1, 2015, Gilbane controlled and dominated Gotham as demonstrated by the following:

a) Joel Picket serves as a leading officer and member of the Board of Directors for both Gilbane and Gotham,

b) The terms of the Transaction required Gotham to transfer to Gilbane all of its construction management business, and

16

c) All of the construction management employees who were active on the Assigned Projects left the payroll of Gotham and become employees of Gilbane.

41.     After April 1, 2015, Gotham was, in effect, an arm of Gilbane in connection with the Assigned Projects, as shown by the following:

a) Gilbane executives and supervisors directed the work performed by Gotham employees employed as laborers on the Assigned Projects.

b) Gilbane utilized insurance programs created and assigned by Gotham to perform work on the Assigned Projects.

c) Gotham had exited the construction management business by April 1, 2015, had no actual involvement in the Assigned Projects and was merely allowing its name to be utilized by Gilbane.

d) The MTDC steward reports for the Assigned Projects refer, in many cases, to the employer of laborers as "Gotham/Gilbane," demonstrating the understanding of these laborers that they were being jointly employed by both Gotham and Gilbane.

e) On the Assigned Projects, and the Ashland Place, Wall Street and Fulton Street Projects, Gilbane controlled labor relations affecting the general conditions laborers, deciding who to hire as laborers, how many laborers to hire, which laborers to terminate and when to terminate them.

42.     As a joint employer with Gotham, Gilbane is obligated under the CBA to assign laborers work to MTDC represented employees at all existing and future job sites in the Greater New York City area.

43.     Gilbane has failed and refused to apply the CBA on certain projects for which it is providing general contractor and construction management business in the New York City

construction industry, including the Wall Street and Fulton Street Projects. Instead of utilizing

MTDC represented laborers on those construction projects, Gilbane has sub-contracted the

laborers work to Tradeoff which does not have a contract with the MTDC and which does not

pay to its employees the wages and benefits established by the CBA.

44.     The MTDC, its members and the multi-employer employee benefit funds to

which employers are required to make contributions pursuant to Article VI, including the Mason

Tenders District Council Welfare Fund, the Mason Tenders District Council Pension Fund, the

Mason Tenders District Council Annuity Fund, the Mason Tenders Training Program Fund have

all been injured by the loss of wages and contributions resulting from Gilbane's assignment of

laborers' work on construction projects in the Greater New York City area to persons that are not

represented by the MTDC and employed pursuant to the CBA.

### THIRD CAUSE OF ACTION
### AGAINST GILBANE AND GOTHAM AS A SINGLE EMPLOYER

45.     MTDC repeats and re-alleges the allegations of the preceding paragraphs as

though fully set forth herein.

46.     Since April 1, 2015, Gilbane and Gotham have constituted a single employer

which employs laborers performing work within the jurisdiction of the MTDC known as

"general conditions work" at various construction projects in the Greater New York City Area

including the Assigned Projects and the Ashland Place, Wall Street and Fulton Street Projects.

47.     Since April 1, 2015, the Greater New York City construction operations of

Gilbane and Gotham are, in fact, a "single employer," or "part of a single integrated enterprise."

48.     Since April 1, 2015, the general conditions laborers employed by both Gilbane

and Gotham  at the Assigned Projects and the Wall Street and Fulton Street Projects are all

within a single appropriate employee bargaining unit consisting of the MTDC multi-employer bargaining unit under the CBA.

49.     Since April 1, 2015, in connection with the employment of general conditions laborers at the Assigned Projects, and the Ashland Place, Wall Street and Fulton Street Projects, Gilbane and Gotham:

a) Maintain interrelated operations in that all of the managers and executives making decisions regarding the construction management operations of Gilbane and Gotham in the Greater New York area for the Assigned Projects, and Ashland Place, Wall Street and Fulton Street Projects, are located at a single office site at Wall Street Plaza, 88 Pine Street, 27th Floor, New York, NY 10005;

b) Exercise centralized control of labor relations for the Assigned Projects and the Ashland Place, Wall Street and Fulton Street Projects through the same individuals, including Joel Picket, John Giamarella and Ed Bigley;

c) Provided common management for the Assigned Projects, and the Ashland Place, Wall Street and Fulton Street Projects using the same people including John Giamarella and Ed Bigley; and

d) Maintained common ownership or financial control over the Gotham and Gilbane businesses providing general contractor or construction management services to real estate developers in the Greater New York City area through Joel Picket and the Gilbane family.

50.     Gilbane and Gotham were jointly engaged in the construction management operations that were performed at the Assigned Projects and at the Ashland Place Project.

51.     The employees of Gilbane and Gotham engaged in the work described in the BCA CBA constitute an appropriate bargaining unit.  The Gilbane and Gotham construction business operations are based in the Gilbane offices.  The skills and functions of the laborers employed by Gotham and Gilbane performing MTDC bargaining unit work were similar. The conditions under which Gotham and Gilbane laborers were employed were similar.  Gotham and Gilbane  maintain centralized administration and managerial and supervisory control over the employees performing MTDC unit work. Many employees were employed by both Gotham prior to the transaction and jointly by Gotham and Gilbane after the transaction.  After the transaction, Gilbane and Gotham became functionally integrated.  The CBA expressly deems paymaster employers as joint employers

## FOURTH CAUSE OF ACTION
## AGAINST GILBANE AS A PERFECTLY CLEAR SUCCESSOR TO GOTHAM

52.     MTDC repeats and re-alleges the allegations of the preceding paragraphs as though fully set forth herein.

53.     Gilbane is a perfectly clear successor to Gotham.  Gilbane acquired the general contractor and construction management business of Gotham as a result of the Transaction. Gilbane's seamless acquisition of this business from Gotham establishes that it is a perfectly clear successor under labor law, as shown by the following:

   a) Gilbane worked on the same projects which Gotham had entered into contracts to perform;

   b) Gilbane provided the same general contractor or construction manager services that Gotham had contracted to provide;

c)  Gilbane used the same managers and supervisors to perform these projects that had performed the same services for Gotham;

d)  Gilbane used the same business vendors as Gotham, such as its insurance providers, to perform this work;

e)  Gilbane used the same equipment and the same process and techniques to perform work covered by the MTDC contract that Gotham had used;

f)  Gilbane used the same MTDC laborers that would have performed this work on the transferred projects that would have performed the work if Gotham had maintained the right to do these Projects. Specifically, at the 10th Avenue Project, the same four individuals employed in the week beginning on or about March 25, 2015, before the Transaction, remained employed in the week beginning April 1, 2015, after the Transaction. At the 6th Avenue Project, the same nine laborers employed in the week beginning on or about March 24, 2015 remained employed in the week beginning April 14, 2015.

53.     As of April 1, 2015, all of the employees employed by Gilbane through Gotham to perform work covered by the CBA were members of and represented by MTDC.  Gilbane continued the same conditions of employment for the MTDC members employed by Gilbane through Gotham on and after April 1, 2015 on each of the Assigned Projects.

54.     Gilbane never provided any notice to the MTDC or its members after the transaction with Gotham that it would change the conditions of employment for any MTDC members.

55.     As a perfectly clear successor to Gotham, Gilbane is required to adhere to the CBA.

## FIFTH CAUSE OF ACTION
## AGAINST GILBANE TO DECLARE IT BOUND TO THE CBA

56.     MTDC repeats and re-alleges the allegations of the preceding paragraphs as though fully set forth herein.

57.     On March 9, 2015, the attorneys for the MTDC wrote to Gilbane requesting information concerning the Transaction.

58.     Gilbane did not reply to this request for information and advised MTDC that it did not have any legal obligation to provide the requested information.

59.     Gilbane denied that it was subject to any collective bargaining agreement with MTDC.

60.     It would be futile for the MTDC to assert a grievance or demand for arbitration against Gilbane since it is insisting that it has no legal obligation to recognize MTDC or adhere to the CBA.

61.     Based on its having engaged in a de facto merger with Gotham, its status as a joint employer with Gotham, its status as a single employer with Gotham and/or its status as a perfectly clear successor to Gotham, MTDC is bound to the CBA, including the arbitration provision.

62.     This Court should declare that Gilbane is bound to the CBA and is obligated to fulfill the responsibilities of employers subject to the CBA, including to engage in arbitration when the MTDC so demands.

## SIXTH CAUSE OF ACTION AGAINST GOTHAM

63.     MTDC repeats and re-alleges the allegations of the preceding paragraphs as though fully set forth herein.

64.     Gotham has violated the CBA by failing to insure that laborers performing work at the Wall Street and Fulton Street Projects are provided with the wages and benefits required by the CBA.

## RELIEF DEMANDED

Plaintiffs request that the following relief be provided:

1.  The MTDC demands that Gilbane Building Company make the union, its members and the employee benefit funds it represents whole for the diversion of bargaining unit work to employees that are not represented by the MTDC. The unpaid wages, union dues and benefit fund contributions Gilbane failed to pay for work covered by the MTDC contract are not currently known but will be established during this litigation but certainly exceed $500,000.

2.  The MTDC demands that Gotham Construction Company LLC make the union, its members and the employee benefit funds it represents whole for the diversion of bargaining unit work to employees that are not represented by the MTDC. The unpaid wages, union dues and benefit fund contributions Gotham failed to pay for work covered by the MTDC contract are not currently known but will be established during this litigation but certainly exceed $500,000.

3.  MTDC demands that an injunction issue compelling Gilbane to adhere in all material respects to the CBA regarding the employment of laborers to perform work covered by the CBA in the Greater New York City Area.

4.  MTDC requests that it be paid its attorneys' fees and costs for the prosecution of this lawsuit.

5.  MTDC requests such other, different and further relief as the Court shall deem just.

## JURY TRIAL DEMAND

The MTDC demands a jury trial on each and every claim in this Complaint.


Dated: September 9, 2016
      New York, NY

                Respectfully submitted,

                KENNEDY, JENNIK & MURRAY, P.C.
                *Attorneys for Mason Tenders District Council*

                By:    Thomas M. Kennedy
                        Susan M. Jennik
                        Cristina Gallo
                113 University Place, 7th floor
                New York, NY 10003
                Tel. (212) 358-1500
                tkennedy@kjmlabor.com
                sjennik@kjmlabor.com
                cgallo@kjmlabor.com